E-FILED
Friday, 04 April, 2025  03:24:45 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

JOSHUA W. KRUGER,
     Plaintiff,

v.

CHERYL HANSEN, *et al.*,
     Defendants.

Case No. 1:24-cv-01212-JEH

**Order**

Plaintiff, proceeding *pro se* and incarcerated at Menard Correctional Center ("Menard"), files a Second Amended Complaint alleging violations of his constitutional rights under 42 U.S.C. § 1983 while he was incarcerated at Pontiac Correctional Center ("Pontiac"). (Doc. 29). This cause is now before the Court for a merit review of Plaintiff's Second Amended Complaint. The Court is required by 28 U.S.C. § 1915A to "screen" Plaintiff's Second Amended Complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A. In reviewing the Second Amended Complaint, the Court takes all factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (internal citation omitted).

# I

Plaintiff alleges he suffers from a myopic astigmatism and requires prescription glasses. Due to his worsening eyesight and outdated prescription, Plaintiff alleges he suffered from migraines when he tried to read, write, or watch television.

In early March 2023, Plaintiff saw Defendant Cheryl Hansen, a nurse practitioner at Pontiac, and complained about his migraines and need for new prescription glasses. Defendant Hansen allegedly told Plaintiff there was nothing she could do because she was not an eye doctor. Defendant Hansen prescribed Motrin for Plaintiff's migraines, but she did not submit a referral request to send Plaintiff to an outside specialist for an eye exam. Plaintiff alleges that Defendant Hansen was deliberately indifferent to his serious medical needs by failing to refer him to an eye doctor.

On an unspecified date, Plaintiff spoke to Defendant Rodney Alford, the Medical Director at Pontiac, about his worsening eyesight, migraine headaches, blurred vision, and dizziness. Defendant Alford submitted a request to send Plaintiff to an off-site eye doctor and advised Plaintiff that it could take a year for Defendant Wexford Health Sources, Inc. to approve the request. Defendant Alford allegedly discontinued the prescription for Motrin for Plaintiff's migraines and did not give him an alternative medication. As a result, Plaintiff alleges he endured extreme migraines for months. Plaintiff claims that Defendant Alford was deliberately indifferent to his serious medical needs by discontinuing his pain medication for his migraines and not prescribing an alternative.

When Plaintiff saw Defendant Alford again in August 2023, Defendant Alford reported he was still waiting for Defendant Wexford to approve his referral request to send Plaintiff to Bond Eye Clinic in Pekin, Illinois.

On an unknown date, Plaintiff filed an emergency grievance. The warden deemed his grievance non-emergent and forwarded it to the grievance counselor. The grievance counselor contacted Defendant Ginger Davis, the Health Care Unit Administrator at Pontiac, about Plaintiff's grievance. Despite knowing that Pontiac did not have an on-site eye doctor, Defendant Davis allegedly "did not take any steps to see why [Plaintiff] did not have an appointment date with Bond Eye Clinic yet." (Doc. 29 at p. 8).

On December 7, 2023, Plaintiff was seen at sick call for his migraines and prescribed Motrin for six months.

On February 27, 2024, Plaintiff spoke with Defendant Alford about his migraines and need for new glasses. Defendant Alford told Plaintiff that he would follow-up with Defendant Wexford about the referral request.

On March 4, 2024, Defendant Cathy Stewart-Stott, the Medical Records Director at Pontiac, scheduled Plaintiff's appointment with Bond Eye Clinic. Plaintiff claims it took Defendant Stewart-Stott over ten months to schedule an appointment.

On March 11, 2024, Plaintiff was transported to Bond Eye Clinic for an eye examination with Dr. William Bond, who diagnosed Plaintiff with dry eye syndrome and updated his prescription.

Plaintiff alleges Defendant Wexford was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by failing to staff an on-site optometrist at Pontiac and delaying approval for Plaintiff to see an off-site specialist. Plaintiff claims Defendant Wexford has an unwritten policy "to put profit before the adequate health care of IDOC prisoners" and understaffs health care units. (Doc. 29 at p. 9). Despite being contractually obligated to do so, Defendant Wexford failed to employ a qualified optometrist at Pontiac. Even after numerous letters, grievances, and lawsuits, including *Lippert v. Baldwin*, Case No.

1:10-CV-04603 (N.D. Ill.), Wexford allegedly continued to fail to hire a qualified on-site optometrist at Pontiac.

Finally, Plaintiff attempts to allege state law negligence claims against Defendants Alford, Davis, and Wexford.

## II

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

The need for an eye examination alone is generally insufficient to establish a serious medical need. *Franklin v. McCaughtry*, 110 F. App'x 715, 721 (7th Cir. 2004). Rather, a serious medical need arises where the defendants are aware that the plaintiff's need for an eye prescription is so severe the plaintiff either hurts himself or cannot function in the prison setting. *Koehl v. Dalsheim*, 85 F.3d 86, 88

4

(2d Cir. 1996) (plaintiff, who suffered from double vision and lack of depth perception, suffered injuries from not having glasses, including almost complete blindness); *Benter v. Peck*, 825 F. Supp. 1411 (S.D. Iowa 1993) (vision of 20/400 was a serious medical need because eyesight fell within definition of blindness and plaintiff was unable to work or function in general population without glasses); *Gevas v. Shering*, No. 14-cv-134-NJR, 2016 WL 1221937, at *5 (S.D. Ill. Mar. 29, 2016) ("significantly blurred vision, double vision, or loss of depth perception, constitutes a serious medical need").

Here, Plaintiff alleges the delay in medical treatment for his myopic astigmatism caused his eyesight to deteriorate, made it difficult to conduct his daily activities, and caused painful migraines, blurry vision, and dizziness. During an examination with Defendant Hansen, Plaintiff alleges he informed her about his eye issues, but she failed to refer him to an off-site specialist. Although Defendant Alford submitted a referral request, Plaintiff claims that Defendant Alford discontinued his prescription for pain medication for his migraines and did not prescribe an alternative. The Court finds that Plaintiff stated a colorable Eighth Amendment deliberate indifference claim against Defendants Hansen and Alford.

Plaintiff asserts that Defendants Alford, Davis, and Stewart-Stott were deliberately indifferent to his serious medical needs by failing to follow IDOC Administrative Directives about off-site medical services and quality improvement and failed to supervise and train their staff. There is no *respondeat superior* under § 1983. In other words, Defendants Alford, Davis, and Stewart-Stott cannot be liable based solely on their supervisory roles. *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc).

Plaintiff also claims that Defendants Davis and Stewart-Stott were responsible for delaying his appointment at Bond Eye Clinic, but it is unclear when Wexford approved the referral request. As Plaintiff admits, Defendant Alford advised it could take a year for Wexford to approve the request. Additionally, Plaintiff alleges that Defendant Stewart-Stott contacted Bond Eye Clinic on March 4, 2024, and his appointment occurred only seven days later on March 11, 2024. Plaintiff's allegations are insufficient to state a claim against Defendants Davis and Stewart-Stott. They are dismissed without prejudice.

Private corporations, such as Wexford, have potential liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978), if they perform a governmental function and, in doing so, injure plaintiff through an unconstitutional policy or practice. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions). "Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority." *Taylor v. Wexford Health Sources, Inc.*, No.15-5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016) (citing *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)).

Here, Plaintiff alleges that "Defendant Wexford has an unwritten policy to put profit before the adequate health care of IDOC prisoners." (Doc. 29 at p. 9). Plaintiff asserts that Defendant Wexford was deliberately indifferent to his serious medical needs by failing to staff an optometrist at Pontiac and intentionally delaying approval for Plaintiff to receive off-site medical care at Bond Eye Clinic. At this juncture, the Court finds that Plaintiff's allegations are sufficient to proceed

on a *Monell* claim against Wexford based on the delay referring Plaintiff to an outside eye doctor for treatment.

Plaintiff attempts to allege state law negligence claims against Defendant Wexford for failing to hire an on-site optometrist at each IDOC prison and against Defendants Alford and Davis for failing to, *inter alia*, monitor and supervise his medical care, follow all applicable IDOC medical policies, and investigate his grievances. The Court declines to exercise jurisdiction over Plaintiff's state law claims. Plaintiff's state law claims are dismissed without prejudice.

**IT IS THEREFORE ORDERED:**

1)    According to the Court's Merit Review of Plaintiff's Second Amended Complaint under 28 U.S.C. § 1915A, this case shall proceed on an Eighth Amendment deliberate indifference claim against (1) Defendant Cheryl Hansen for allegedly failing to refer Plaintiff to an off-site eye doctor for an eye examination, (2) Defendant Rodney Alford for allegedly discontinuing Plaintiff's prescription medication for his migraines and failing to prescribe an alternative medication, and (3) Defendant Wexford Health Sources, Inc. based on the delay in referring Plaintiff to an off-site eye doctor for an eye examination. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2)    The Clerk is directed to ADD Wexford Health Sources, Inc. as a Defendant.

3)    Defendants Ginger Davis and Cathy Stewart-Stott are DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

4)    Defendants Hansen and Alford have returned their executed Waivers of Service of Summons. (Doc. 13). Therefore, no waivers need to be issued for

Defendants Hansen and Alford. Defendants Hansen and Alford are DIRECTED to answer Plaintiff's Second Amended Complaint within 30 days of this Order.

5)     All deadlines in this matter are STAYED and will be reset after Defendant Wexford files an answer.

6)     The Clerk is DIRECTED to send Defendant Wexford, pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Summons; 2) a Waiver of Service of Summons; 3) a copy of the Second Amended Complaint; and 4) a copy of this Order.

7)     The Court will attempt service on Defendant Wexford by mailing a waiver of service. If Defendant fails to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendant and will require Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

8)     Defendant Wexford shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendant's positions. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the answer is necessary or will be considered. If Defendant has not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendant Wexford files an answer, the Court will enter an order resetting the deadlines in this matter.

9)     If Defendant no longer works at the address Plaintiff provided, the entity for whom Defendant worked while at that address shall submit to the Clerk

1:24-cv-01212-JEH    # 34    Filed: 04/04/25    Page 9 of 10

Defendant's current work address, or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of Defendant's forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

10)    This District uses electronic filing, which means that after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to defense counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to defense counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

11)    Defense counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defense counsel shall arrange the time for the deposition.

12)    Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

13)    Plaintiff shall be provided a copy of all pertinent medical records upon request.

14)    Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization

to defense counsel.

15)    The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: April 4, 2025

s/Jonathan E. Hawley
U.S. District Judge