IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

JOSHUA W. KRUGER,
     Plaintiff,

v.

WEXFORD HEALTH SOURCES,
INC., *et al.*,
     Defendants.

Case No. 1:24-cv-01212-JEH

### Order

     This matter is now before the Court on Plaintiff's Motion for Leave to File Third Amended Complaint (Doc. 61), Plaintiff's Motion to Compel Discovery (Doc. 63), Plaintiff's Motion for Temporary Restraining Order (Doc. 66), and Plaintiff's Motion for Sanctions Against Defense Counsel (Doc. 67). For the reasons stated below, Plaintiff's Motion for Leave to File Third Amended Complaint is DENIED, Plaintiff's Motion to Compel Discovery is GRANTED IN PART and DENIED IN PART, Plaintiff's Motion for Temporary Restraining Order is DENIED, and Plaintiff's Motion for Sanctions Against Defense Counsel is DENIED.

### I

     On June 10, 2024, Plaintiff, proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated while he was incarcerated at Pontiac Correctional Center ("Pontiac"). (Doc. 1). On March 26, 2025, Plaintiff filed a Second Amended Complaint. (Doc. 29). On April 4, 2025, the Court issued a Merit Review Order and allowed Plaintiff to proceed on Eighth Amendment deliberate indifference claims against (1) Defendant Nurse

Practitioner Cheryl Hansen for allegedly failing to refer him to an off-site eye doctor for an eye examination, (2) Defendant Dr. Rodney Alford for allegedly discontinuing his prescription medication for migraines and failing to prescribe an alternative medication, and (3) Defendant Wexford Health Sources, Inc. ("Wexford") for allegedly delaying his referral to an off-site eye doctor for an eye examination. (Doc. 34). The Court dismissed Defendants Healthcare Unit Administrator ("HCUA") Ginger Davis and Medical Records Director Cathy Stewart-Stott without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. *Id.* at pp. 5-6. The Court declined to exercise supplemental jurisdiction over state law negligence claims that Plaintiff attempted to assert against Defendant Wexford for failing to hire an on-site optometrist at every prison and Defendants Dr. Alford and Davis for, *inter alia*, failing to monitor and supervise his medical care and investigate his grievances. *Id.* at p. 7.

## II

On July 18, 2025, Plaintiff filed a Motion for Leave to File Third Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) seeking leave to file a Third Amended Complaint to reinstate Ginger Davis and Cathy Stewart-Stott as Defendants and to replead his state law claims. (Doc. 61). Defendants filed a Response in opposition to Plaintiff's Motion on July 31, 2025. (Doc. 64).

### A

Federal Rule of Civil Procedure 15(a)(2) provides that the court should freely give leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). Pursuant to this Court's Scheduling Order, motions for leave to amend were due by April 3, 2025. (Doc. 20 at p. 2, ¶ 2). Leave of Court is required to file an Amended Complaint more than twenty-one days after an Answer or other responsive pleading is filed. *Id.* (citing Fed. R. Civ. P. 15(a)). Defendants filed their Answer to

2

Plaintiff's Second Amended Complaint on April 17, 2025. (Doc. 45). The time allowed for amendments has passed. As a result, Plaintiff's Motion must be reviewed under the "heightened good-cause standard of Rule 16(b)(4)." *Brehmer v. Dittman*, No. 13-0888, 2014 WL 3404977, at *9 (E.D. Wis. July 10, 2014) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)). "[A]mong the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case 'moving toward trial.'" *Id.* at 720. In determining whether there is good cause to allow the amendment, the court is to consider "the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (upholding trial court's denial of leave to amend which was asserted nine months after the deadline). "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

### B

In his Motion, Plaintiff argues he recently received discovery documents from Defendants which show when Wexford approved Dr. Alford's request for him "to go out on a medical writ." (Doc. 61 at p. 3). Plaintiff states this "document changes the tenor of the case and [he] believes he now can show 'good cause' to file the [] amended complaint." *Id.* Plaintiff asserts that the Third Amended Complaint will not impose an undue burden on Defendants, as the new claims stem from documents already produced and arise from the same series of events.

Defendants argue that Plaintiff's Motion seeks to add new parties, which will impose a significant burden on them and delay the case. For instance, Defendants state they will be required to file a responsive pleading to the new complaint, all parties will need to engage in further discovery and motion practice, and Plaintiff will need to be deposed a second time. Defendants also argue they

will incur additional costs and expenses due to further discovery and prolonged litigation.

In his proposed Third Amended Complaint, Plaintiff seeks to add HCUA Davis and Medical Records Director Stewart-Stott as Defendants. Plaintiff alleges that Counselor Wykes spoke to Defendant Davis about his grievance regarding his ongoing eye issues and his requests to see an eye doctor. (Doc. 61-1 at p. 9, ¶ 31). Plaintiff states the HCUA is responsible for supervising and overseeing the operation and activities of the HCU at Pontiac. *Id.* at ¶ 32. Additionally, he alleges that the HCUA is part of the Quality Improvement Committee, and according to the Illinois Department of Corrections' ("IDOC") Administrative Directive 04.03.125, the HCUA is required to conduct a review of all medical complaints and grievances to determine the quality of care. *Id.* Plaintiff also alleges that in approximately November 2023, Defendant Davis "did not inquire with defendant Cathy Stewart-Stott (the medical records director) or anyone else to see why it was taking so long for Kruger to go out to Bond Eye Clinic, when numerous other prisoners were in fact, going out to Bond Eye Clinic all the time in 2023." *Id.* at pp. 10-11, ¶ 39. Plaintiff alleges that Defendant Stewart-Stott scheduled an appointment for him at Bond Eye Clinic on March 4, 2024, after it was approved over eight months before. *Id.* at p. 11, ¶ 42.

There is no *respondeat superior* liability under § 1983. In other words, Davis and Stewart-Stott cannot be liable based solely on their supervisory roles. *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc). While Plaintiff is critical of the handling of his various grievances, this is not enough to plead personal liability under § 1983 against Davis and Stewart-Stott. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

4

Additionally, Plaintiff alleges that Stewart-Stott contacted Bond Eye Clinic on March 4, 2024. His appointment at Bond Eye Clinic occurred only seven days later on March 11, 2024. Plaintiff's allegations are insufficient to state an Eighth Amendment deliberate indifference claim against Davis and Stewart-Stott.

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Wexford for alleged negligent hiring and retention. *See* 28 U.S.C. § 1367(c). Plaintiff's *Monell* claim against Wexford is based on the alleged delay in referring him to an off-site eye doctor for an eye examination. (Doc. 34 at p. 7, ¶ 1). The *Monell* claim does not relate to negligent hiring and retention.

The Court finds that filing Plaintiff's proposed Third Amended Complaint would be futile. Plaintiff's allegations against Davis and Stewart-Stott are insufficient to state a constitutional claim. *See KAP Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 529 (7th Cir. 2022) ("district court may deny leave to amend if amendment would be futile"). Plaintiff's Motion for Leave to File Third Amended Complaint is DENIED.

### III

Plaintiff filed a Motion to Compel Discovery asking the Court to compel Defendants Hansen and Wexford to provide further responses to his Interrogatories #4, #5, and #9, Requests to Produce #10, #17, and #21, Second Requests to Produce #1, #2, and #3, and Request to Admit #9. (Doc. 63). Defendants filed a Response arguing that Plaintiff's Motion should be denied because their objections are proper. (Doc. 65).

In **Interrogatory #4 to Defendant Hansen**, Plaintiff requested: "State whether you have worked as a practitioner of the healing arts in any other prison other than Pontiac C.C. If the answer to this interrogatory is "yes," please state the date and years of such employment." (Doc. 63-1 at p. 3). Defendant Hansen

answered: "Objection, interrogatory #4 requests information which is neither relevant nor likely to lead to the discovery of admissible evidence." *Id.*

In his Motion to Compel, Plaintiff claims that Defendant Hansen's response is deficient because he believes her disclosure as an "expert witness" is relevant to his inquiry regarding prior employment at other prison facilities. Defendant Hansen argues that her employment history at other facilities is irrelevant to Plaintiff's claims, which are limited to the treatment provided for his eye condition. Defendant Hansen was disclosed as a Rule 26(a)(2)(c) expert witness, as she is a Defendant in this case. She was not specifically "retained" to provide expert opinions. The Court agrees that Interrogatory #4 is irrelevant to Plaintiff's claims. Plaintiff's Motion regarding Interrogatory #4 is DENIED.

In **Interrogatory #5 to Defendant Hansen**, Plaintiff requested:

> Please state whether you have been sued by prisoners other than Kruger in Illinois (past or present) for medical negligence or deliberate indifference to their medical care? If you stated "yes" in response to this Interrogatory #5, please state the name of the case, court number, and respective court the suit was filed in.)

*Id*. Defendant Hansen responded: "Objection, interrogatory #5 requests information which is neither relevant nor likely to lead to the discovery of admissible evidence." *Id.*

In his Motion, Plaintiff argues that whether Defendant Hansen was involved in prior lawsuits is highly relevant and may lead to other discoverable information, such as prior depositions. Defendant Hansen argues Interrogatory #5 is irrelevant. The Court agrees. Defendant Hansen's involvement in other cases is irrelevant to whether she was allegedly deliberately indifferent to Plaintiff's eye condition. Plaintiff's Motion regarding Interrogatory #5 is DENIED.

In **Interrogatory #9 to Defendant Hansen**, Plaintiff requested: "Please state what reference books, manuals, or other publications are contained in the Pontiac

6

Correctional Center's health care unit's medical reference library." *Id.* at p. 4. Defendant Hansen answered: "Objection, interrogatory #9 requests information which is neither relevant nor likely to lead to the discovery of admissible evidence." *Id.*

Plaintiff argues the contract between the IDOC and Wexford states that Wexford must create a medical reference library at each prison. Plaintiff argues that certain books may contain treatment protocols or standard procedures for headaches, migraines, or optometry, and he could use this information to cross-examine Defendant at trial. Defendant Hansen argues the existence of medical books in the prison library has no bearing on any allegations in this case or her medical knowledge. The Court finds that Defendant's objection to Interrogatory #9 was proper. Plaintiff's Motion regarding Interrogatory #9 is DENIED.

In **Request to Produce #10 to Wexford**, Plaintiff requested any "ESI" contained in Wexford's database regarding any prisoner grievances or complaints about the lack of eyecare or an onsite optometrist at Pontiac in 2022 and 2023. *Id.* at p. 19. Defendant Wexford objected that inmate grievances were not in its possession, and the request was overly broad and improperly requested documents protected by HIPAA. *Id.*

Plaintiff argues he did not ask for other prisoners' grievances. Instead, he requested "ESI" in Wexford's database from 2022 and 2023. Plaintiff argues that other complaints about the lack of eyecare at Pontiac are relevant to "Wexford's corporate knowledge." (Doc. 63 at p. 7). Plaintiff asserts that any IDOC prisoner names and numbers could be redacted. Defendant argues that providing this information would violate other patients' HIPAA rights and that the treatment of other patients with unrelated conditions is irrelevant to the issues in this case. At merit review, the Court found that Plaintiff's allegations were sufficient to proceed on a *Monell* claim against Wexford based on the alleged delay in referring him to

7

an outside eye doctor for treatment. (Doc. 34 at pp. 6-7). The Court finds that Plaintiff's request for "any and all 'ESI'" regarding any prisoner grievance or complaints about the lack of eyecare in 2022 and 2023 is overly broad. Plaintiff's Motion regarding Request to Produce #10 is DENIED.

In **Request to Produce #17 to Wexford**, Plaintiff stated: "On page 17 of the contract between Wexford/IDOC it says (see Medical DEF 0711): 'Vendor shall arrange for the position of eye examinations, which shall be performed in accordance with ACA Standards and IDOC performance-based audit standards.' Please produce these relevant 'ACA Standards and IDOC performance-based audit standards.'" (Doc. 63-1 at p. 21). Defendant Wexford responded: "Objection, request for production #17 is overly broad in that it is not properly narrowly tailored in time or scope to be commensurate with the needs of the case. Further, the request is improperly vague and fails to be tailored to any specific care situation." *Id.*

In his Motion, Plaintiff argues the request is not vague because it specifically relates to eye examinations. Additionally, Plaintiff argues the standards governing eye examinations are in the contract between IDOC/Wexford, which was provided in discovery. Defendant Wexford argues the request is vague and confusing, and it is unclear how these documents are relevant to Plaintiff's allegations. Defendant also argues this request could be directed to the ACA or IDOC, as these entities may possess and control the requested documents. Here, it is unclear how the "ACA standards and IDOC performance-based audit standards" are relevant to Plaintiff's allegations. The Court agrees this request would be more properly directed to either ACA or IDOC, as ACA and IDOC may possess and control these documents. Plaintiff's Motion regarding Request to Produce #17 is DENIED.

In **Request to Produce #21 to Wexford**, Plaintiff requests various pages and sample forms. Specifically, Plaintiff requests:

> In previous discovery disclosures (see Medical DEF 1005-1010) in regards to Utilization Management Guidelines, there are [pages] missing. Please produce the complete Wexford Utilization Management Guidelines and Sample Forms, including but not limited to, the following missing pages:
>
> * pages 3, 4, 5, 6, 7, 8 and 9 of the Utilization Management Guidelines;
> * pages 14 to, and through to, page 33 of the Utilization Management Guidelines;
> * UM-006 and UM-007;
> * UM-011: Daily Activity Report;
> * UM-008, UM-009, and UM-010;
> * Daily Activity Report (DAR) – sample form;
> * Launch Report – sample form;
> * Medical Special Services Referral and Report (DOC-0254) – sample form;
> * Scheduling Log, Combined IDOC-WHS UM Document – sample form;
> * Specialty Appointment Document Request (SADR) Form – sample.

*Id.* at pp. 22-23. Defendant Wexford responded:

> Defendant objects to Request No. 21 as it is irrelevant, overly broad and disproportionate to the needs of the case. Further, it is not likely to lead to discovery of relevant information. Defendant's Request No. 19 directed to Dr. Alford asked for guidelines for scheduling a prisoner for outside medical specialist care. Those were provided, see Medication DEF 1004-1010. Any additional pages or sample forms are irrelevant.

*Id.* at p. 23. In his Motion to Compel, Plaintiff argues:

> Defendant Wexford has a manual that describes the procedures to be followed when requesting an IDOC prisoner be seen by an off-site doctor or specialist. They produced some pages, but blacked out or

> did not provide the rest or sample forms referenced. Kruger has reason to believe that defendant Wexford and/or defendant Alford, or both, did not follow proper procedures listed in Wexford/IDOC guidelines. Whether they did not file the proper form(s), keep proper log(s), etc. will be unknown until the missing pages and forms are produced. The missing pages may be irrelevant, but Kruger will never know that until Wexford allows him to see/read them.

(Doc. 63 at p. 9). In response, Defendant Wexford argues it already provided Plaintiff all guidelines in its possession regarding prisoner scheduling procedures for outside medical special procedures, and all other pages are extraneous information that are irrelevant and provide no information on prisoner scheduling guidelines. Regarding the "sample forms," Defendant argues that these forms provide no relevant information other than providing an exemplar of a "Daily Activity Report" or a "Scheduling Log." Defendant argues that such information is unnecessary and has no bearing Plaintiff's claims.

The Court finds that the missing pages and sample forms could be relevant to Plaintiff's claim against Defendants regarding the delay in referring him to an outside eye doctor for treatment. "The term 'relevant' for the purposes of discovery is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issues that is or may be in the case. The party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Green v. Meeks*, No. 20-CV-00463-SPM, 2021 WL 3631264, at *4 (S.D. Ill. July 14, 2021) (internal citations and quotations omitted)). Defendants have not met their burden of proving that the missing pages and sample forms are irrelevant. Plaintiff's Motion to Compel regarding Request to Produce #21 is GRANTED. Defendant Wexford is ordered to provide the missing pages and sample forms identified in Plaintiff's Motion to Compel (Doc. 63 at p. 8, ¶ 6) within thirty days of this Order.

In his **Second Requests to Produce #1 and #2 to Wexford**, Plaintiff requested "any and all audited or unaudited financial statements" and federal tax returns from 2022, 2023, and 2024. (Doc. 63-1 at pp. 26-27). Defendant Wexford responded that the requests were overly broad and irrelevant.

In his Motion, Plaintiff argues that "evidence of financial condition is relevant to the question of the level of punitive damage," and Wexford's financial information is relevant to show that Wexford was "penny-pinching compared to its corporate wealth." (Doc. 63 at p. 10). Defendant argues that this matter involves an alleged failure to treat Plaintiff's eye issue, not Defendant's alleged "penny-pinching." The Court finds that Defendant's objections to Requests #1 and #2 are proper. Request #1 is overly broad and improperly vague, as it requests "financial statements" for three years. It is also unclear what "financial statements" consist of. Wexford's federal tax returns are irrelevant. Plaintiff's Motion regarding Requests to Produce #1 and #2 is DENIED.

In his **Second Request to Produce #3 to Wexford**, Plaintiff requested "[a]n index of all Wexford Health Sources, Inc. policies and procedures for any topic." (Doc. 63-1 at p. 27). Defendant responded that the request was overly broad and irrelevant.

In his Motion, Plaintiff argues that "[a]n index will lead to highly relevant information and allow [him] to pinpoint what he needs." (Doc. 63 at p. 11). Defendant argues that Request #3 is clearly overly broad, and an "index" of all Wexford's policies and procedures does not exist. The Court agrees that Request #3 is overly broad. Plaintiff made no attempt to show how "any and all" of Defendant's policies and procedures are relevant to his claims. Plaintiff's Motion regarding Request to Produce #3 is DENIED.

In **Request to Admit #9 to Defendant Hansen**, Plaintiff asked Defendant Hansen to admit that optometrists at Pontiac Correctional Center would perform

examinations on prisoners prior to 2023. Defendant Hansen objected to the request based on relevancy.

In his Motion, Plaintiff argues that "[t]he fact that when staffed, an optometrist could do the eye exam in Pontiac's HCU is highly relevant." (Doc. 63 at p. 11). Defendant argues the allegations in Plaintiff's complaint arose during and after 2023. Therefore, evidence of optometrists who performed eye exams at Pontiac before the relevant time period is immaterial and irrelevant. The Court finds that Defendant's objection to this request was proper. Plaintiff's Motion regarding Request to Admit #9 is DENIED.

**IV**

On August 5, 2025, Plaintiff filed a Motion for Temporary Restraining Order asking the Court to order the IDOC to give him access to his legal paperwork and discovery in this matter. (Doc. 66). Plaintiff states that on July 27, 2025, he was transferred from the West Cellhouse to the North 2 Restrictive Housing Cellhouse at Menard Correctional Center ("Menard"). Plaintiff states he was denied access to his legal books, legal work product, and discovery documents while in restrictive housing. Plaintiff states he asked a correctional counselor and personal property officer for his legal books and materials, but they informed him that according to Menard's property rules, legal documents are given on an "as needed basis." *Id.* at p. 2. Plaintiff argues the Court should order Menard to "turn over [his] legal documents and books to him immediately" because he will be unable to adequately represent himself without access to them. *Id.*

The Court cannot order the IDOC, which is not a party to this case, to take specific action by providing Plaintiff with his legal books and materials while in restrictive housing. The IDOC is responsible for enforcing certain rules and regulations applicable to inmates in restrictive housing. Therefore, Plaintiff's Motion for Temporary Restraining Order is DENIED. Due to the limited access to

his legal materials, Plaintiff may request additional time to comply with deadlines in this matter, if necessary.

**V**

On August 8, 2025, Plaintiff filed a Motion for Sanctions Against Defense Counsel asking the Court to impose sanctions against defense counsel, James D. VanRheeden, for not allowing him to clarify his testimony during his deposition on July 25, 2025. (Doc. 67). Plaintiff states that at the beginning of the deposition, he informed Mr. VanRheeden that he had seizures, hit his head multiple times, and was unable to easily recall dates and names. Plaintiff states that during the deposition, Mr. VanRheeden asked him when certain conversations with the Defendants occurred, but he had trouble recalling the exact dates. Plaintiff states there was "one major confusing date in question regarding whether Defendant Dr. Alford examined him in August 2023 or December 2023." (Doc. 67 at p. 2). At the end of the deposition, Plaintiff states that he asked to clarify his testimony about the dates of certain conversations, but Mr. VanRheeden allegedly refused and told him the deposition was over.

On August 18, 2025, Defendants filed a Response to Plaintiff's Motion for Sanctions. (Doc. 68). Defendants state that a transcript of the deposition is not yet available, as Plaintiff reserved signature and has not completed his review of the transcript. Defendants assert that at no point during the deposition did Mr. VanRheeden deny Plaintiff's request to clarify a specific response to a specific question. At the conclusion of the deposition, Mr. VanRheeden thanked Plaintiff for his time and informed him the deposition was over. In response, Plaintiff reached for a packet of documents and represented that there were additional issues he wanted to discuss and/or read into the record. Defendants state that Mr. VanRheeden informed Plaintiff the deposition was a question-and-answer session, not an opportunity for him to plead his case into a written transcript.

13

Plaintiff did not provide any legal authority to support his request for sanctions. The Court finds that there is no basis for imposing sanctions upon defense counsel. If Plaintiff would like to clarify his deposition testimony, he may file an affidavit with a motion for summary judgment or as an exhibit to his response to Defendants' motion for summary judgment. If this matter proceeds to a trial, Plaintiff may testify at trial and clarify any discrepancies regarding dates or other issues. Plaintiff's Motion for Sanctions is DENIED.

**IT IS THEREFORE ORDERED:**

1)    Plaintiff's Motion for Leave to File Third Amended Complaint [61] is DENIED.

2)    Plaintiff's Motion to Compel [63] is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion regarding Interrogatories #4, #5, and #9, Requests to Produce #10 and #17, Second Requests to Produce #1, #2, and #3, and Request to Admit #9 is DENIED. Plaintiff's Motion regarding Request to Produce #21 is GRANTED; Defendant Wexford is ORDERED to produce the missing pages and sample forms identified in Plaintiff's Motion to Compel (Doc. 63 at p. 8, ¶ 6) within 30 days of this Order.

3)    Plaintiff's Motion for Temporary Restraining Order [66] is DENIED.

4)    Plaintiff's Motion for Sanctions Against Defense Counsel [67] is DENIED.

*It is so ordered.*

Entered: August 20, 2025

s/Jonathan E. Hawley
U.S. District Judge

14